JANICE C. CLARK, DPM,

 Plaintiff,

  v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,

 Defendant.

CV 115-110

---

## O R D E R

---

Presently before the Court is Defendant's motion for summary judgment. (Doc. 34.) Plaintiff alleges that Defendant retaliated against her in violation of Title VII. Defendant argues that it had legitimate, non-retaliatory reasons for firing Plaintiff, and that Plaintiff has not provided sufficient evidence to rebut its non-retaliatory reasons. The Court **DENIES** Defendant's motion.

## I. Background

### A. Plaintiff's Employment

Plaintiff began work for Defendant in August 2009 as a Podiatrist and Assistant Professor of Orthopedics. On March 8, 2010, Dr. Douglas Miller, Dean of the School of Medicine, offered to renew Plaintiff's contract for the 2010-2011 academic

year.  Dr. Miller made his offer on the recommendation of Plaintiff's immediate supervisor, Dr. Norman Chutkan, Chairman of the Department of Orthopedics.

In April 2010, Plaintiff complained to Solomon Walker, the Director of Affirmative Action and Equal Opportunity Employment, about race and sex discrimination.  Plaintiff complained about the clinic in general, but she specifically named Mark Lewis, the Department Administrator, as a particular cause for concern. According to Plaintiff, Mr. Walker told her he would speak with Dr. Chutkan about the complaint.  On May 5, 2010, Dr. Chutkan, Mark Lewis, and Susan Norton, Vice President of Human Resources, met with Plaintiff to discuss several performance issues.  Dr. Chutkan outlined the performance issues in a written memo.  They included:

- Failure to complete patient notes in a timely manner which resulted in management being unable to bill for services rendered by Plaintiff

- Two missed meetings with Dr. Chutkan

- Failure to arrive at the Lake Oconee clinic on a date when Plaintiff had patients scheduled

- Allegations that Plaintiff might have attempted to get reimbursement for a business trip from multiple sources

- Failure to adequately communicate with residents and other faculty members

The next day, Plaintiff met once more with Mr. Walker to discuss filing a complaint about race and sex discrimination. On May 7, 2010, Ms. Norton met with Mr. Walker to discuss HR

2

issues. Ms. Norton's agenda for the meeting included a discussion of Plaintiff. In her deposition, Ms. Norton claimed that she probably only wanted to discuss what she perceived as Plaintiff's rude behavior during their meeting on May 5, but she could not recall whether they discussed the discrimination complaints made by Plaintiff to Mr. Walker.

On May 14, 2010, Ms. Norton emailed Mr. Lewis to discuss not renewing Plaintiff's contract for the 2011-2012 fiscal year. In the same email, she also discussed the possibilities of rescinding Plaintiff's offer for the 2010-2011 term, but determined that such a move would be too administratively difficult. In response, Mr. Lewis asked Ms. Norton how they should communicate their decision not to renew Plaintiff's contract. By May 26, Mr. Lewis sent a draft non-renewal letter to Dr. Chutkan. Dr. Chutkan testified that he made the decision to fire Plaintiff on either May 26 or June 30. (Dr. Chutkan bases his testimony on written memoranda and some confusion exists as to when Dr. Chutkan actually relayed his decision to Dean Miller.) In August 2010, Defendant informed Plaintiff it would not renew her contract for the 2011-2012 fiscal year.

On October 27, 2010, Plaintiff, still in Defendant's employ, filed a charge of discrimination with the EEOC. By November 2010, she had already begun to look for new employment in anticipation of her contract ending in June 2011. Despite applying to over fifty institutions, and receiving several

interviews, Plaintiff could not get a job. As soon as the potential employers checked her references, they ceased discussions with her. Suspicious, she contracted with a company to conduct a reference check. When the company called Dr. Chutkan to inquire about Plaintiff in November 2011, he stated, "It was a mistake to list me [as a reference]. I can tell you that. . . . She filed a few complaints against me. . . . One was regarding discrimination." (Doc. 38 at 15.)

Plaintiff remained unemployed for a year after her contract with Defendant ended. In July 2012, Plaintiff finally gained employment as a podiatrist with the federal government working for Indian Health Services in Zuni, New Mexico — population 6,302 persons as of the 2010 census. Indian Health Services had been trying to hire a podiatrist for two years, and Plaintiff accepted its offer of $109,000 per year. Her compensation, not including other benefits, had been $135,000 under Defendant's employ.

Since her initial EEOC charge in October 2010, Plaintiff has made three amended charges. On January 28, 2011, Plaintiff formally amended her charge to include retaliation claims related to Defendant's decision not to renew her contract. On June 6, 2012, Plaintiff amended her EEOC charges to include retaliation claims related to negative references she believed Dr. Chutkan was giving to potential employers. Plaintiff filed her last amended charge on June 28, 2012.

## B. Plaintiff's Bankruptcy

In December 2012, Plaintiff filed for Chapter 13 Bankruptcy. Plaintiff's debt consisted of $180,000 of student debt, a mortgage of an unspecified amount on her house, and $32,572.05 of other miscellaneous debt. Plaintiff's mortgage debt was discharged when she lost her home in Augusta to foreclosure in February 2014. Plaintiff's student loan debt cannot be discharged under existing bankruptcy laws. As of April 2016, Plaintiff had paid $25,000.00 of the remaining $32,572.05 of debt under her bankruptcy plan, and she continues to make monthly payments of over $800.

During her bankruptcy proceedings, Plaintiff made several filings listing all of her assets and potential assets and their corresponding values. One of the potential assets Plaintiff disclosed was her claim against Defendant in this Court. On the advice of counsel, Plaintiff initially listed the value of her claim as $1.00 on December 12, 2012. Plaintiff continued to list her claim as $1.00 on multiple subsequent filings to the bankruptcy court, despite alleging over $400,000 worth of damages in her initial complaint to this Court. On June 1, 2016, Defendant filed this motion for summary judgment asking the Court to assert judicial estoppel on the basis that Plaintiff's disclosures to the bankruptcy court were inconsistent with her complaint in this Court. On June 17, 2016, Plaintiff amended her filings in the bankruptcy court to

reflect a more accurate estimate of damages in her pending litigation.

## II. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id.

at 323. When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-

movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. Discussion

Defendant makes two arguments in its motion for summary judgment. First, Defendant argues that Plaintiff's retaliation claim should be barred by the equitable doctrine of judicial estoppel because Plaintiff made inconsistent statements to the bankruptcy and district courts. Second, Defendant argues that Plaintiff's retaliation claim fails because she has not rebutted its evidence of legitimate, non-retaliatory reasons for not renewing her contract.

### A. Judicial Estoppel

Judicial estoppel is an equitable doctrine that prevents litigants from taking one position in one legal proceeding and

asserting a contrary position in a subsequent or different legal proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001)(citing Davis v. Wakelee, 156 U.S. 680, 689 (1895)). It exists "to protect the integrity of the judicial process," and it is invoked at the court's discretion. Id. (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)). But, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." Id. (citations omitted)(internal quotations omitted).

Nevertheless, the Supreme Court has enumerated several factors that inform a court's application of the doctrine. "First, a party's later position must be 'clearly inconsistent' with its earlier position." New Hampshire, 532 U.S. at 750. Second, a court should ask "whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). Finally, the court should consider "whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." Id.

The Eleventh Circuit has further reduced the non-reducible doctrine to two factors it deems consistent with the factors advanced by the Supreme Court. "First, it must be shown that

the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Burnes, 291 F.3d at 1285. These two factors, however, "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." Id.

The Court will analyze Defendant's claim under the Eleventh Circuit framework. Because Plaintiff made two inconsistent statements under oath, the first factor is satisfied. The question for the Court, then, is whether the inconsistencies made "a mockery of the judicial system." The Court concludes they did not.

Defendant has produced no evidence showing that Plaintiff's actions were detrimental to the integrity of the judicial system. From the very beginning of her bankruptcy proceedings, Plaintiff disclosed the suit as a potential asset and made no effort to hide her pending litigation. Defendant has produced no evidence that Plaintiff had anything to gain by making inconsistent statements in her filings to the bankruptcy and district courts, or that any creditor, or itself, was disadvantaged by Plaintiff's inconsistent statement. This is most likely because Plaintiff had nothing to gain and no creditors to disadvantage. Of the debt that caused her to enter into Bankruptcy, $180,000 of it could not be discharged, and her

mortgage was discharged after the bank foreclosed on her house. This left only $32,572.05 in remaining debt. Of that debt, Plaintiff had paid $25,000.00 as of April 2016, and every indication is that she will succeed in discharging the remaining $8,000.00. Moreover, because she listed the suit on her filings, all parties to the bankruptcy proceeding had full notice that the suit was a potential asset and could have inquired further into its value if Plaintiff failed to discharge her debt under the bankruptcy plan. Thus, the inconsistent statements did not make a mockery of the judicial system and did not disadvantage any party in either proceeding. Therefore, the Court will not apply judicial estoppel.

## B. Retaliation Claim

A claim for retaliation under Title VII that relies on circumstantial evidence, such as this one, follows the same McDonnel Douglas burden-shifting analysis that applies to Title VII discrimination cases. Brown v. Ala. Dept. of Transp., 597 U.S. F.3d 1160, 1181 (11th Cir. 2010). Under the McDonnel Douglas framework, "[t]o make a prima facie case for retaliation, the plaintiff must show: 1) a statutorily protected expression; 2) an adverse employment action; 3) a causal link between the protected expression and the adverse action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). If a plaintiff establishes a prima facie case, then the finder of fact must presume retaliation and the

defendant has the burden of rebutting that presumption by producing a legitimate reason for the adverse employment action. Id. "If the defendant offers legitimate reasons, the presumption of retaliation disappears," and the plaintiff must show that the proffered reasons were merely pretext for retaliation. Id. If the plaintiff offers sufficient proof of pretext, she is entitled to a jury trial if she has provided enough evidence by which a rational jury could conclude the defendant retaliated against her. See Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).

Plaintiff asserts two instances of retaliation: (1) Defendant's decision to not renew her contract because she made an internal discrimination complaint and (2) Defendant's interference with her ability to obtain future employment after it issued her non-renewal letter. Defendant challenges only Plaintiff's allegation of retaliation stemming from the non-renewal letter. And Defendant argues only that it had legitimate, non-retaliatory grounds for not renewing Plaintiff's contract, which Plaintiff cannot prove were mere pretext. Defendant does not challenge Plaintiff's prima facie case. Thus, the first question before the Court is whether Defendant successfully rebutted the presumption of retaliation for its decision not to renew Plaintiff's contract, and, if so, whether Plaintiff can demonstrate the legitimate reasons proffered by Defendant were mere pretext. The second question is whether

12

Defendant's failure to raise any argument specifically addressing Plaintiff's allegations of interference with her job search constitutes a waiver of that claim for purposes of summary judgment.

### 1. Defendant's Non-Renewal of Plaintiff's Contract

The burden borne by a defendant seeking to rebut the presumption of retaliation established by a prima facie case is "exceedingly light." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997)(quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)). To satisfy its burden, Defendant "'need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)(quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)). The Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus." Id. (emphasis in original)(citations omitted)(internal quotation marks omitted).

Defendant has met this burden by producing several pieces of evidence "which would allow the trier of fact rationally to conclude," Combs, 106 F.3d at 1528, that it did not decline to renew Plaintiff's contract in retaliation for her discrimination

complaints. First, Defendant offers a memo given to Plaintiff on May 5, 2010, outlining, in detail, the various alleged transgressions of Plaintiff. Second, Dr. Chutkan and Ms. Norton testified, under oath, that Plaintiff was rude and disrespectful during their meeting with her on May 5, 2010. They further testified that Plaintiff's behavior was a driving force behind their decision to terminate her. Third, another one of Plaintiff's supervisors, Mr. Lewis, testified that Plaintiff was insubordinate in her interactions with Dr. Chutkan. These three pieces of evidence are sufficient to show a legitimate, non-discriminatory reason for not renewing Plaintiff's contract — that she was insubordinate.

Once a defendant carries its burden, "the presumption of discrimination created by the McDonnel Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 255 n.10)). A plaintiff may rebut the proffered reason "'either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256). A plaintiff, however, need not offer evidence beyond that offered for her prima facie case. Id. She need only "cast sufficient doubt on the defendant's proffered [non-retaliatory] reasons to permit a reasonable factfinder to conclude that the employer's

proffered 'legitimate reasons were not what actually motivated its conduct.'" Id. (quoting Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994)). To determine if a plaintiff has cast sufficient doubt, "[t]he district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder would find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1072 (3rd Cir. 1996)).

Plaintiff makes two arguments to rebut Defendant's legitimate reasons. First, she argues that the reasons outlined in the May 5 performance memo are false. Second, she argues that the timing of Defendant's actions is sufficient to deprive the proffered legitimate reasons of credibility. The Court analyzes both arguments in turn.

Plaintiff's first argument fails to rebut Defendant's proffered reasons because it relies solely on her unsubstantiated perceptions. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Holifield, 115 F.3d at 1565. If "the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrates poor performance, an employee's assertions of his own good performance are insufficient to defeat summary

15

judgment, in the absence of other evidence." Id. Because Defendant has offered documented proof of poor performance and insubordination, Plaintiff's naked assertions that she was not late to work, that she was not insubordinate, or she was an effective worker will not suffice to rebut the legitimate reasons proffered by Defendant.

Plaintiff's second argument succeeds, however, because it demonstrates temporal proximity so close as to cast doubt on Defendant's explanation. "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). Although this rule technically applies to an element of the plaintiff's prima facie case (causation), it can also apply to her attempt to rebut Defendant's proffered legitimate reasons. See Combs, 106 F.3d at 1528.

A brief recitation of the facts will highlight the close proximity between Plaintiff's complaint and Defendant's decision to not renew her contract. Plaintiff was hired in August 2009. In March 2010, Defendant offered to renew her contract for the 2010-2011 fiscal year. In April, Plaintiff met with Mr. Walker, the Director of Affirmative Action and Equal Opportunity Employment, to complain about race- and gender-discrimination,

and Mr. Walker told her he would discuss the discrimination complaints with Dr. Chutkan. Then, on May 5, Dr. Chutkan and Ms. Norton held a meeting with Plaintiff outlining multiple work performance issues that had not previously been formally addressed. The next day, Plaintiff met again with Mr. Walker and told him she wanted to file a race- and gender-discrimination complaint. The day after that, Mr. Walker met with Ms. Norton and their agenda for the meeting specifically mentioned Plaintiff. By May 14, Ms. Norton and Mr. Lewis were discussing about how best to terminate Plaintiff's employment. They determined that they would have to wait until June 2011 because it would be too complicated to rescind Plaintiff's contract for the 2010-2011 fiscal year. Twelve days later, Mr. Lewis circulated a draft letter of non-renewal to Dr. Chutkan. Dr. Chutkan testified that he decided on not to renew Plaintiff's contract on either May 26 or June 30, and Defendant notified Plaintiff of her non-renewal in August of 2010. Thus, the temporal proximity between Plaintiff's discrimination complaint and Defendant's decision to not renew her contract is, at a minimum, very suspect.

The Court acknowledges, however, that "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart, 231 F.3d at 799.

Nevertheless, it finds that this exception does not apply here. First, the record contains no evidence that Dr.Chutkan lacked knowledge Plaintiff engaged in protected conduct prior to taking an adverse employment action. In Dr. Chutkan's deposition, he never asserted that he did not know of Plaintiff's complaint prior to the May 5 meeting or his decision not to renew. Rather, he admits that Mr. Walker spoke with him about Plaintiff's complaints, but said he could not recall whether that conversation happened before or after the May 5 meeting. Second, Plaintiff offers evidence rebutting any allegation that Dr. Chutkan did not know of Plaintiff's complaint prior to the May 5 meeting. Plaintiff testifies that Mr. Walker, after his initial meeting with her in April, said he would discuss the discrimination complaints with Dr. Chutkan.

Defendant argues, however, that Plaintiff's testimony about Mr. Walker's statements is inadmissible hearsay. Defendant is correct that "'[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.'" Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012)(quoting Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)). And Defendant is correct that the testimony is hearsay. But Defendant is not correct that the testimony is inadmissible hearsay.

Federal Rule of Evidence 803(3) creates an exception to the hearsay rule for "a statement of the declarant's then existing

18

state of mind (such as motive, intent, or plan) . . . ." Mr. Walker's declaration was a statement of his intent or plan to discuss the discrimination complaints with Dr. Chutkan. While the declaration cannot be used as evidence that he did indeed tell Dr. Chutkan about Plaintiff's complaint, it can be used to show that he intended to tell Dr. Chutkan about the complaint and when he formed that intention. See T. Harris Young & Assoc., Inc. v. Marquette Electrs, Inc., 931 F.2d 816, 828 (11th Cir. 1991). Thus, the declaration is hearsay, but it is admissible hearsay and may be used for purposes of establishing circumstantial evidence that Dr. Chutkan did know about Plaintiff's complaint prior to his decision to recommend Plaintiff's contract not be renewed.

In addition to the temporal evidence offered by Plaintiff, the Court also notes that Defendant offers no evidence, other than deposition testimony, that it was unsatisfied with Plaintiff's performance prior to the May 5 meeting. Despite the fact that Plaintiff had worked for Defendant since August 2009, Defendant offers no documentation of complaints made about Plaintiff or meetings held with Plaintiff prior to the meeting with her on May 5, 2010. Although Dr. Chutkan testified that he had concerns about Plaintiff when he renewed her contract in March, he made no formal attempts to address her deficiencies until after she complained to Mr. Walker about discrimination. This circumstantial evidence lends further credence to

Plaintiff's ability to convince a trier of fact that Defendant's proffered legitimate reasons were mere pretext.

Plaintiff, however, has one more hurdle to jump. Even if a plaintiff successfully rebuts a defendant's proffered legitimate reasons, she might still lose at summary judgment. To survive summary judgment, a plaintiff must provide sufficient evidence such that "a rational fact finder could conclude the [employer's] action was [retaliatory]." Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1339 (11th Cir. 2015). Based upon the close temporal proximity and the lack of previous performance deficiencies, the Court finds that Plaintiff has provided enough evidence such that a rational jury could conclude that Defendant declined to renew Plaintiff's contract in retaliation for her discrimination claims. Thus, Plaintiff is entitled to proceed to a jury on this claim.

### 2. Defendant's Interference with Plaintiff's Job Search

Plaintiff argues that she is entitled to a jury trial on her claim that Dr. Chutkan interfered with her job search in retaliation for her discrimination claims against him because Defendant failed to address this claim on summary judgment. The Court agrees.

A party may not obtain summary judgment on any portion of a claim unless they specifically request summary judgment for that portion. Federal Rule of Civil Procedure 56 states that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which

summary judgment is sought." The language of Rule 56 makes clear that Defendant should have raised the issue of its alleged interference with Plaintiff's job search if it desired to have this Court make a summary-judgment ruling on that issue. Because Defendant failed to do so, it waived its right to challenge that issue at the summary judgment stage.

## IV. Conclusion

Defendant has provided sufficient evidence to rebut the presumption that its decision not to renew Plaintiff's contract was retaliation, but Plaintiff has provided her own evidence sufficient for a reasonable jury to conclude that Defendant's proffered reasons were mere pretext for retaliation. Plaintiff has also provided sufficient evidence such that a rational trier of fact could conclude Defendant retaliated against her. Thus, Plaintiff is entitled to a jury trial on this claim, and the Court **DENIES** Defendant's motion for summary judgment. (Doc. 34.) Also, because Defendant failed to challenge Plaintiff's assertion that it retaliated against her by interfering with her job search, Plaintiff is entitled to a jury trial on that claim as well.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of March, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA